United States Bankruptcy Court
Eastern District of Michigan
Southern Division - Flint

In re:

Bradley Noblit
Peggy Brisbane Noblit                                   Case No. 04-32030
        Debtors.                              Chapter 7
_____/                          Hon. Walter Shapero


Patricia Williams,
        Plaintiff

v.                                                       Adv. No. 04-03128

Bradley Noblit
Peggy Brisbane Noblit

        Defendants.
_____/

## OPINION REGARDING THE DISCHARGEABILITY OF A DEBT PURSUANT TO 11 U.S.C. § 523(a)(4)

Pending before the Court is complaint filed by Patricia Williams ("Plaintiff") against Bradley Noblit and Peggy Brisbane Noblit ("Debtors"), to determine the dischargeability of a debt (Adv. No. 04-03128). Pursuant to 28 U.S.C. §157(b)(2)(I), this is a core proceeding over which this Court has jurisdiction. 28 U.S.C. § 1334.

I.    PROCEDURAL HISTORY

The Debtors filed a voluntary petition under Chapter 7 on May 11, 2004 (Case No. 04-32030). The Debtors listed Plaintiff as a creditor in their schedules. On August 13, 2004, Plaintiff filed a complaint alleging that pursuant to 11 U.S.C. § 523(a)(4), the debt owed to her in the amount of $91,245.00, should be held nondischargeable due to the

Debtors' fraudulent and larcenous conduct. The Debtors filed an Answer to the complaint arguing that they did not engage in any misconduct, and thus the debt owed to Plaintiff should be discharged (Docket #6). A trial was held on June 6, 2006, June 27, 2006, and July 11, 2006; and the parties filed post-trial briefs as ordered by the Court (Docket ##36, 37). Oral arguments were held on November 7, 2006, and the Court subsequently took the matter under advisement.

II.     FACTUAL BACKGROUND

Pursuant to the pleadings filed in the instant case and the evidence produced at trial, the following facts are undisputed. Plaintiff and the Debtors entered into a Purchase Agreement, whereby Plaintiff would sell to the Debtors certain real property located in the City of Flint (Defendants' Exhibit C). Pursuant to the Purchase Agreement signed and executed by the Plaintiff and the Debtors on February 18, 2000, the parties understood that Plaintiff would have 150 days after the closing date to vacate the home. If Plaintiff failed to vacate the home within this time, she would have to commence making rental payments to the Debtors totaling $300.00 per month.

Subsequent to the signing of the Purchase Agreement, Plaintiff went to Canada to begin building a home. Upon learning that she would be unable to return for the closing date of March 30, 2000, Plaintiff executed a power of attorney in favor of Gladyce Saidoo, Plaintiff's neighbor, to appear on her absence at the closing ("Power of Attorney") (Defendants' Exhibit A). On March 30, 2000, the closing was held and a warranty deed was executed conveying the real property from Plaintiff to the Debtors (Defendants' Exhibit B).

2

Early in August, 2000, Plaintiff determined that she would not be able to vacate the home within the 150 days provided in the purchase agreement, that 150 day period expiring on August 27, 2000. As a result, Plaintiff through a third party, tendered rent to the Debtors in the amount of $300.00 prior to August 27, 2000. The Debtors did not accept the rental income offered to them. Instead, on or about August 28, 2000, the Debtors filed suit in the 68th District Court for the City of Flint ("District Court") (D.C. 00-5410-LT), for nonpayment of rent in the amount of $300.00, and claimed damages for moving and storage costs (Plaintiff's Exhibit 3). On or about September 13, 2000, the Debtors obtained a judgment from District Court which stated in relevant part that "an order evicting [Plaintiff] (writ of restitution) will be issued unless you pay the Plaintiff or the court the amount due . . . or you move out on or before Sept. 25, 2000." The judgment provided that Plaintiff owed the Debtors a total of $351.00.

Prior to obtaining a writ of restitution and prior to the deadline of September 25, 2000, the Debtors went to the home of Gladyce Saidoo; served her with a notice to quit; and obtained keys from Ms. Saidoo to Plaintiff's residence (Defendants' Exhibit D, page 5). Subsequently, the Debtors proceeded to remove Plaintiff's personal property from the home (*See* Docket #32, Joint Final Pretrial Report, ¶ 4). Soon thereafter, Plaintiff returned and could not gain entrance to the home because the Debtors had also changed the locks.

On or about September 25, 2000, Plaintiff went to District Court and paid the amount due in rent and costs totaling $351.00. On September 26, 2000, Plaintiff filed a motion to prevent the issuance of a writ of restitution and stated that the Debtors had changed the locks on the doors and removed her personal belongings from the home

3

(Defendant's Exhibit D). Since the Debtors also happened to be at the 68th district courthouse on September 26, 2000 when Plaintiff was there (presumably to obtain a writ of restitution), the parties were asked to appear before the Honorable Michael D. McAra, District Judge (*See* Defendants' Exhibit D, Transcript of Hearing). At the hearing, Judge McAra stated in relevant part that the Debtors could not "use self help on a tenancy situation" and had "no right to retake possession of the property without a writ of restitution." "It is a wrongful eviction." *Id.* at pp. 6-7. Therefore, Judge McAra ordered the Debtors to immediately return any property that was taken from the house and to give Plaintiff a set of keys. The Debtors did not appeal this order. The Debtors subsequently provided Plaintiff with keys to the home and keys to two storage units where Plaintiff's belongings were allegedly stored by the Debtors upon removal from the home.

In September, 2001, Plaintiff filed a lawsuit against the Debtors in the Circuit Court for the County of Genesee for wrongful eviction ("State Court Action") (01-071491-CZ). The Debtors did not appear or file a responsive pleading in the State Court Action and a default judgment was entered against them on June 17, 2002. *See* Docket ##14, 16. The amount awarded to Plaintiff totaling $91,245.00, which was calculated on the basis of treble damages awarded pursuant to the State of Michigan's wrongful eviction statute (Mich. Comp. Laws § 600.2918); with interest to accrue at the statutory rate.[1]

On May 11, 2004, the Debtors filed a voluntary petition under Chapter 7 and listed

---

[1] According to Plaintiff's testimony, the amount of actual damages was based on a document she prepared and provided to the Circuit Court of Genessee County when the default judgment was granted, listing all of the items that had not been placed in the storage units and were missing (*See* Plaintiff's Exhibit 1). The items were allegedly worth approximately $30,000.

4

the default judgment entered against them. Thereafter, Plaintiff filed this adversary proceeding alleging that the debt owed to her by the Debtors should be held nondischargeable pursuant to 11 U.S.C. § 523(a)(4). The Court previously denied Plaintiff's Motion for Summary Judgment and the matter proceeded to trial. *See Williams v. Noblit* (*In re Noblit*), 327 B.R. 307 (Bankr. E.D. MI. 2005).

III. DISCUSSION

A. "Larceny" pursuant to § 523(a)(4)

Pursuant to 11 U.S.C. § 523(a)(4), a debt is nondischargeable if it is incurred by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The exceptions to discharge under § 523 are to be strictly construed in favor of the debtor. *Rembert v. AT&T Universal Card Servs.* (*In re Rembert*), 141 F.3d 277, 281 (6th Cir. 1987); *Manufacturer's Hanover Trust Co. V. Ward* (*In re Ward*), 857 F.2d 1082, 1083 (6th Cir. 1988). The Plaintiff bears the burden of proving the requisite elements of the exception to discharge by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279 (1991).

As a preliminary matter, Plaintiff's post-trial brief states that this case falls under either embezzlement or larceny. Embezzlement contemplates an original taking that was lawful, being defined by the federal common law as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister* (*In re Brady*), 101 F.3d 1165, 1172-73 (6th Cir. 1996). It was clearly established at trial that the taking of Plaintiff's property was unlawful, and therefore an embezzlement is not involved.

5

The federal common law defines larceny as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *Graffice v. Grim* (*In re Grim*), 293 B.R. 156, 166 (Bankr. N.D. Ohio 2003). The testimony at trial and pleadings filed by the parties demonstrate that there was a wrongful taking and carrying away of Plaintiff's property without her consent. First, this Court agrees with the District Court's assessment that the taking was wrongful. It is uncontested that the Debtors removed or permitted the removal of Plaintiff's belongings without first obtaining a writ of restitution and engaged in self-help which is clearly prohibited under Michigan law. In sum, the more credible testimony heard by the Court in this case requires the conclusion that many of Plaintiff's belongings were simply removed from the dwelling, either by the Debtors or by persons whom the Debtors permitted to enter the building and that some of what was removed was simply left outside to be taken away by various persons, with the exception of those items that the Debtors were able to put in the locker, or were otherwise accounted for, it being an equally credible conclusion that many items that were in the house were not accounted for and were not put in the locker.

Second, the testimony provided by Plaintiff established that she did not consent to the changing of the locks or the removal of her belongings from the residence. Plaintiff not only testified to this fact, but her actions in offering the Debtors the rent money demonstrated an intent to remain in the home. As a consequence, the testimony of the co-debtor, Bradley Noblit, that Plaintiff had given them permission to remove her belongings, is simply not credible. Furthermore, the fact that they were given the key by which they

6

gained access to the residence does not mean they thereby obtained the right or permission to remove its contents. Thus, a larceny occurred within the meaning of § 523(a)(4).

The next issue is whether Plaintiff established that the Debtors had the requisite intent to convert the property to their use. The intent must exist at the time of the taking. *See In re Scarpello*, 272 B.R. 691, 703 (Bankr. N.D. Ill. 2002) (citations omitted); *In re Hoffman*, 70 B.R. (Bankr. W. D. Ark. 1986). A determination as to whether the Debtors in the case at bar acted with the intent required to except a debt from discharge as one for "false pretenses, false representation or actual fraud," "for his embezzlement or larceny," or for his "willful and malicious injury" is reduced to the lowest common denominator, a specific intent to harm, whether it is an intent to defraud/deceive, an intent to misappropriate another's property, or an intent to injure another's person or property." *In re Knapik*, 322 B.R. 311 (Bankr. N.D. Ohio 2004). Intent may be shown by circumstantial evidence given that the Debtors are "unlikely to admit the perpetration of a wrongful act." *Id.* at 316; *See also Goodmar, Inc. v. Hamilton* (*In re Hamilton*), 306 B.R. 575, 582 (Bankr. W.D. Ky. 2004).

An analysis of the facts and circumstances surrounding the Debtors' actions, leads the Court to a determination that the Debtors acted with the intent to convert the Plaintiff's property to their own use.[2] The Debtors' intent can be inferred by their actions after

---

[2]The Court interprets the term "their own use" to mean the use of someone other than the owner, i.e. it is the deprivation of the Plaintiff's rights at the instance of the Debtors, not that the Debtors themselves necessarily or personally ended up with the property, that is the essential ingredient here. *See In re McCoy*, 189 B.R. 129 (Bankr. N.D. Ohio 1995).

7

Plaintiff offered them rental income. The Debtors and Plaintiff agreed to and voluntarily signed a Purchase Agreement. The agreement included a provision specifically allowing for Plaintiff to continue to reside at the residence as long as she made the corresponding monthly rental payments totaling $300.00. However, despite this agreement, the Debtors declined to accept the rental payments made by Plaintiff through a third party. Instead, the Debtors proceeded to file an action in District Court for eviction based on "non-payment of rent." The Debtors did not inform the District Court of Plaintiff's attempt to pay the rent on a prior occasion; and no testimonial or documentary evidence was presented at trial to indicate that the Debtors made any attempt to contact Plaintiff to resolve the matter prior to the filing of the case in District Court.

Moreover, prior to the deadline set by the District Court to issue the writ of restitution, the Debtors proceeded to obtain keys to the property from Plaintiff's attorney in fact. Under the Laws of the State of Michigan, powers of attorney to convey real property are strictly construed and may not be expanded so as to authorize the performance of other acts not mentioned. *Ann Arbor Bank v. Stegeman*, 46 Mich. App. 685, 208 N.W.2d 517 (Mich. App. 1973) (*citing Bergman v. Dykhouse*, 316 Mich. 315, 319, 25 N.W.2d 210 (1946)). Although Ms. Saidoo had a Power of Attorney to convey Plaintiff's property to the Debtors during the closing, there is no evidence or language in the Power of Attorney (particularly in light of the agreement deferring the transfer of possession), authorizing her to turn over the keys to the Debtors; or authorizing the removal of Plaintiff's belongings from the home; or authorizing the storage of Plaintiff's personal belongings; or authorizing the Debtors to change the locks on the doors of Plaintiff's residence; nor

8

would, turning over the keys necessarily involve a turnover of the contents of the house. More importantly, as stated by the State Court Judge, Plaintiff's right to retain possession of the residence paying the rental income, was simply not extinguished until after September 25, 2000 (Defendants' Exhibit D, p. 6). Since she timely paid the rental income to the District Court, Plaintiff was entitled to continue her right to possession of the residence and by doing so, maintain her own control over its contents.

It is true that the Debtors in an attempted compliance with the state court order gave Plaintiff the key(s) to the premises as well as the storage locker to which the Debtors had removed Plaintiff's belongings (though not all of them - most was not accounted for). Those facts do not fully vitiate or preclude a finding of the required intent, though they might bear somewhat on it. They bear more appropriately on the damages issue than on the intent issue, and their weight in the inquiry is diminished by reason of the fact that (1) what was done was done pursuant to a court order requiring it, as opposed to having been voluntarily undertaken; and (2) intent is to be determined at the time of the wrongful eviction and dispossession.

### B. The Dischargeability of Treble Damages

Pursuant to the Supreme Court's decision in *Cohen v. De La Cruz*, this Court finds that since the Debtors' actions constitute larceny under 11 U.S.C. § 523(a)(4), the entire debt, including treble damages awarded pursuant to the applicable state statute, is nondischargeable. *Cohen v. De La Cruz*, 523 U.S. 213 (1998). The (a)(4) exception, in relevant part, makes nondischargeable "*any debt* for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The Supreme Court in *Cohen* interpreted

9

04-03128-wsf    Doc 41    Filed 02/07/07    Entered 02/07/07 15:37:27    Page 9 of 11

the term "debt" as used in § 523 to include treble damages, attorney's fees, and "other relief that may exceed the value obtained by Debtor." *Cohen v. De La Cruz*, 523 U.S. at 223. Although the *Cohen* case involved a claim under § 523(a)(2)(a), the Supreme Court cited to §§ 523(a)(4) and (a)(6) as examples of instances in which statutory damages, including attorney's fees, that exceed actual damages would be nondischargeable. *DirectTV v. Karpinsky* (*In re Karpinsky*) 328 B.R. 516, 528 (Bankr. E.D. MI. 2005) (*citing Cohen v. De La Cruz*, 523 U.S. at 219-220)).

This result is also consistent with other case law. For example, in *DirectTV v. Karpinsky*, *supra,* the bankruptcy court held that the Debtors' conduct constituted larceny under Section 523(a)(4), thus all damages, including statutory damages and attorney's fees authorized under the Federal Communications Act (47 U.S.C. § 605), were held to be nondischargeable under § 523(a)(4), §523(a)(6). *Id.* at 528. Moreover, in *In re Hamama*, the bankruptcy court held that treble damages awarded on the conversion claim were nondischargeable under § 523(a)(6). *In re Hamama*, 182 B.R. 757, 759 (Bankr. E.D. MI. 1995) (*see also In re Barber*, 326 B.R. 463 (B.A.P. 10th Cir. 2005) (where the Court held under § 523(a)(2), that all damages flowing from the fraud were nondischargeable); In *re Simpson*, 226 B.R. 284 (B.A.P. 10th Cir. 1998) (where the Panel held that prior case law holding that punitive damages were dischargeable, are no longer viable in light of the Supreme Court's decision in *Cohen v. de la Cruz*, 523 U.S. 213). While this might appear to be a somewhat harsh result in light of all the circumstances, it does point out the potential severe peril and adverse consequences attendant to ignoring state court proceedings, even though one is contemplating filing for bankruptcy. The cited law

10

appears quite clear and the court has no discretion to ignore it on some vague equitable grounds. Debtors may have some state court remedies affording judgment payment relief over time based on their ability to pay (*See e.g.* Mich. Comp. Laws § 600.6201 *et seq.*; M.C.R. § 3.104 or otherwise). To the extent they still may have any such rights, the judgment of this Court does not perforce preclude the Debtors from seeking any such available relief in the state court.

IV.     CONCLUSIONS

For the reasons stated herein, this Court finds that Plaintiff has proven that the Debtors' actions constitute larceny pursuant to 11 U.S.C. § 523(a)(4); and thus the debt involved is nondischargeable.

**Signed on February 07, 2007**

                                    **/s/ Walter Shapero**
                                    **Walter Shapero**
                                    **United States Bankruptcy Judge**